UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:05-CR-05-DCR |
| v. | ) | No. 6:08-CV-7035-DCR |
| | ) | |
| DONALD R. BLAKLEY, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

*** *** *** ***

On September 15, 2008, Defendant Donald R. Blakley, proceeding *pro se*, filed a motion seeking to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255. (D.E. 84). The United States filed a response to Defendant's § 2255 motion on January 23, 2009 (D.E. 102), to which Defendant has filed a reply (D.E. 104). Pursuant to local practice, this matter was referred to the undersigned for a recommended disposition. 28 U.S.C. § 636(b).

## I. BACKGROUND

On January 27, 2005, Defendant was charged with one count of conspiring to knowingly receive and distribute visual depictions of a minor engaged in sexually explicit conduct, 15 counts of knowingly receiving visual depictions of a minor engaged in sexually explicit conduct, and one count of possessing one or more electronically-stored visual depictions of a minor engaged in sexually explicit conduct. (D.E. 1). On April 5,

2005, a two-day jury trial was conducted in which Defendant was represented by Douglas

Benge, counsel appointed to represent Defendant under the provisions of the Criminal

Justice Act.[1]  (D.E. 37, 46, 47).  On direct appeal, the Sixth Circuit summarized much of

the evidence introduced at trial.

> The record in this case indicates that the criminal investigation of the
> defendant began as the result of a report to police by Blakley's then-wife,
> Mary Jackson (formerly Mary Blakley), that she had witnessed the
> defendant viewing a pornographic picture of a child on the computer in
> their home.  Jackson told police that as she walked by the defendant, sitting
> at the computer in their kitchen, he quickly closed out the screen he had
> been viewing—but not quickly enough to prevent her from seeing that he
> was viewing a picture of a female child undressed from the waist up.  When
> she confronted the defendant about what she had seen, he admitted that the
> child in the picture was only 13 years old.
> Jackson's report to the police department was investigated by
> Officer Tom Busic, who, after obtaining consent from Mary Jackson,
> seized the computer from the house, along with several unconnected hard-
> drive units, a scanner, some 100 computer disks, and more than 150 CD-
> Roms that were near the computer.  Upon later examination of the seized
> evidence, investigators found no sexually explicit photographs of children
> on the computer itself, but at least 97 such photos were discovered on
> various CD-Roms and computer disks.  Adult pornographic images were
> also found on the disks, including "vintage" pornography from the 1920s or
> 1930s, as well as nude or sexually explicit photos of Mary Jackson and
> nude photos of another government witness, Janet Hall, who was Jackson's
> niece from a previous marriage.

*United States v. Blakley*, 239 F. App'x 229, 230-31 (6th Cir. 2007) (unpublished).

The Sixth Circuit also discussed the evidence introduced at trial—including

Defendant's own admissions—which tended to show that the disks and CDs containing

the sexually-explicit photographs likely belonged to Defendant:

---

[1]     Mr. Benge was initially appointed to represent Defendant at his arraignment on January
31, 2005.  (D.E. 5).

Officer Busic also testified that Blakley had said that the computer was owned by Mary Jackson but admitted that the CDs and disks found near the computer belonged to him. In her testimony, Mary Jackson confirmed that the computer was bought in her name and that she was making payments on it. She explained, however, that she had bought the computer at the defendant's direction, that it was the defendant, not she, who had extensive computer knowledge, and that the defendant used the computer much more than she did. In fact, she said, Blakley often used the computer much of the day and late into the night. Other testimony confirmed that Blakley had more than rudimentary computer knowledge: Blakley told Busic that the unattached CPUs came from other people's computers that Blakley had "worked on," and another witness testified that Blakley had said that he worked as a computer repair man.

Janet Hall also testified for the government, explaining that unbeknownst to Jackson, she had had an affair with Blakley but that Blakley had broken it off at some point. She also testified that while she was at Jackson and Blakley's home, Blakley was constantly on the computer and that, at one point, she saw Blakley viewing a sexually explicit picture of a child similar to the picture introduced as government's exhibit 13. She said that she did not report the incident at the time because she did not believe that it was "serious." Hall also explained that she came forward with this information only after she had been arrested on drug charges and admitted that as a result of her cooperation, the drug charges were ultimately reduced from a felony to a misdemeanor.

*Id.* at 231.

Defendant's primary strategy at trial was to show that he was set up by his wife. Both defense witnesses, Darrell and Relta Wilson, "were prepared to testify that before the defendant was arrested on the charges at issue, Mary Jackson had stated that she was going to 'set up' the defendant, meaning that she was going to get him arrested on some kind of charge."[2] *Id.* at 232. The witnesses also testified regarding the relative computer skills possessed by Defendant and his wife. Darrell "testified on direct that he often saw Jackson using the computer but never saw Blakley using it—even though he was aware

---

[2] The trial court excluded this portion of these witnesses' testimonies as hearsay, not falling within any exception. *Blakley*, 239 F. App'x at 232.

that Blakley had 'skills' with computers and that Blakley had tried in the past to repair Darrell's computer. On cross-examination, Darrell said that once he saw Jackson looking at a 'dirty picture[]' of a naked boy who appeared to be 14 or 15 years old." *Id.*

Apparently not believing these defense witnesses, the jury returned a guilty verdict on all 17 counts after a two-day trial. (D.E. 47). Upon Defendant's request (*see* D.E. 54), the Court, on July 28, 2005, relieved Mr. Benge of any further responsibilities in the action. (D.E. 57). With new counsel appointed, the Court proceeded to sentence Defendant to 87 months of incarceration on each count running concurrently, to be followed by supervised release for a term of life. (D.E. 66). Defendant appealed his conviction to the Sixth Circuit where he asserted two grounds for relief. First, he argued that the trial court erred in excluding hearsay evidence offered by the Wilsons. *Blakley*, 239 F. App'x at 230. Second, he argued that the evidence was legally insufficient to sustain his convictions on the conspiracy and receiving counts.[3] *Id.* On August 20, 2007, in a per curiam opinion, the Sixth Circuit held that there was insufficient evidence for the jury to convict Defendant of conspiracy and reversed on that count, but affirmed Defendant's conviction on the remaining 16 counts. *Id.* at 233-35. "Because the sentence imposed on the conspiracy count, 87 months, was the same as that imposed concurrently on each of the other counts of conviction," the Sixth Circuit did not require Defendant to be resentenced. *Id.* at 235.

---

[3] Defendant did not contest the sufficiency of the evidence as it related to the possession count. *Blakley*, 239 F. App'x at 234.

Defendant did not petition the Supreme Court for a writ of certiorari. Instead, he subsequently filed the instant motion for relief pursuant to 28 U.S.C. § 2255 raising 28 grounds for relief among which are claims of ineffective assistance of counsel, prosecutorial misconduct, fourth and fifth amendment violations, due process violations, and insufficiency of the evidence.

## II. DISCUSSION

Under 28 U.S.C. § 2255, the Court must vacate and set aside a judgment of conviction only if the Court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255. To warrant relief under this provision, a defendant "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185-86 (1979)).

Generally speaking, a defendant can succeed in a § 2255 motion raising a constitutional error only if he can show by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), that "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Schledwitz v. United States*, 169 F.3d 1003, 1011 (6th Cir. 1999)

(applying the *Brecht* standard in the context of a § 2255 motion). To prevail on a motion to vacate alleging non-constitutional error, the petitioner must establish a fundamental defect resulting in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process." *Gilliam v. United States*, 211 F.3d 1269 (table), 2000 WL 553919, at *1 (6th Cir. 2000) (citing *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999)).

## A. Procedural Default

"Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)). Therefore, a defendant procedurally defaults a claim "by failing to raise it on direct review . . . ." *Bousley v. United States*, 523 U.S. 614, 622 (1998). Likewise, absent highly exceptional circumstances, § 2255 does not provide the defendant with an avenue for re-litigating matters that he raised and lost on direct review. *See Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996)).

In grounds one through four, Defendant contends that certain evidence should have been excluded at trial because it was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), (D.E. 84 at 4-6), the fourth amendment prohibition on unreasonable searches and seizures, (*id.* at 7-8), and the due process clause (*id.* at 8-9). These are all matters which could have been raised at trial, but Defendant failed to do so. In a somewhat convoluted argument, Defendant points out that he had been previously

indicted on similar charges in state court. Before those charges were dismissed in lieu of this federal prosecution, his state court attorney had moved to suppress some of this evidence. Defendant notes that the state charges were dismissed before the state court had a hearing on Defendant's motion. In his words, "Mr. Blakley was not afforded a full and fair oppertunity (sic) to litigate this in state court or federal." (D.E. 85 at 3). That the state charges were dismissed before the state court heard arguments on his motion to suppress is of little consequence. Even had the state court ruled in favor of Defendant on the motion to suppress, that decision would not be binding in his federal prosecution. *See United States v. Lloyd*, 10 F.3d 1197, 1209 (6th Cir. 1993) ("A prior adverse suppression decision in a state court simply does not preclude the federal government, which was not a party to the state action, from using the evidence in a federal proceeding.") (quotation omitted). Additionally, Defendant was not convicted of the charges that were brought in state court. That matter was dismissed, and therefore, there is no basis to challenge the actions that took place there. Finally, Defendant was indicted by the Federal Grand Jury in January 2005, but his trial did not occur until April. Defendant had ample opportunity to raise any of these concerns related to the propriety of the evidence. Simply put, these asserted grounds for relief were procedurally defaulted.

In grounds five and six, Defendant challenges the sufficiency of the indictment. (*Id.* at 10). As with the previous grounds for relief, Defendant had more than a sufficient opportunity to review the indictment and raise any improprieties before trial, but failed to do so. Thus, this claim is procedurally defaulted. It is also meritless. He argues that the indictment was "illegal" because it contains the wrong name, and it did not list the correct

electronic device that contained the child pornography. But just a brief review of the indictment shows that Defendant's allegations are simply untrue. (*See* D.E. 1 at 1-5 (correctly naming "Donald R. Blakley" as the Defendant in the caption and for each count); *id.* at 4 (correctly charging that the child pornography was located on "electronic storage media")).

In grounds seven through eleven, Defendant argues prosecutorial misconduct based upon the withholding of evidence and the conduct of the prosecuting attorney at trial. (*Id.* at 10-11). Defendant claims that he did not raise these issues on appeal because his appellate counsel "stated that he could not raise issue that was not raised at trial." (D.E. 84 at 10-11). Thus, Defendant acknowledges that he was aware of these matters before he brought his direct appeal to the Sixth Circuit. This issue was required to be raised at that time, and having failed to do so, Defendant has procedurally defaulted. *See United States v. Dakers*, No. 3:03-cr-090, 2008 WL 5333842, at *6 (S.D. Ohio Dec. 19, 2008) ("This claim of prosecutorial misconduct could have been but was not raised on direct appeal. Therefore it is procedurally defaulted and cannot be considered on the merits in a § 2255 proceeding.").

Finally, in grounds 27 and 28, Defendant challenges the sufficiency of the evidence. (*Id.* at 15). To the extent these grounds were raised on his direct appeal, he cannot raise them again here. *See Wright*, 182 F.3d at 467. And to the extent he did not raise them on appeal, these grounds are procedurally defaulted. Defendant's contention that he only became aware of the these grounds for relief after his direct review was final is simply unavailing.

## B.  Ineffective Assistance of Counsel

Although the matters discussed above, *supra* § II.A, were procedurally defaulted, Defendant is not necessarily precluded from raising them here.  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas . . . if the defendant can first demonstrate either 'cause' and actual 'prejudice,'" or that he is "'actually innocent'"  *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).  "The ineffective assistance of counsel constitutes cause."  *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Such a claim has two components.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  However, a defendant is not permitted to second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).  Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.  Under the second component of a claim for ineffective assistance of counsel, "the defendant must show that the deficient performance prejudiced the defense."  *Id.* at 687.  That is, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. A defendant has the burden of making both showings, otherwise "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The Court will analyze, in turn, each of Defendant's claims of ineffective assistance of counsel. (D.E. 84 at 12-15 (grounds 12 through 26)).

### i. Failing to Move to Suppress Statements (Grounds 15-17)

Two statements made by the Defendant to Officer Busic were used at trial during the government's case-in-chief. The first statement was made on August 17, 2004, after Defendant had been arrested on unrelated charges. While in the booking room of the Middlesboro Police Department, Officer Busic spoke with Defendant about the disks and CDs that were seized from his home. Defendant "stated that the disks and the CDs . . . seized from around the computer . . . did belong to him." (D.E. 75 at 41:16-17). When Officer Busic inquired further, Defendant denied that the disks and CDs contained child pornography. (*Id.* at 41:19-20). Defendant was released from jail the next day after paying a fine. Defendant claims that Officer Busic asked these questions without having read him his *Miranda* rights. He also states that Officer Busic continued to inquire into the matter further even after Defendant stated that he wanted to speak with an attorney.

The second incriminating statement was made on September 11, 2004. After discovering 97 images of child pornography on the disks and CDs, Officer Busic went to Defendant's home to arrest him on child pornography charges. (*Id.* at 65:23-66:3). Before making the arrest, Officer Busic told Defendant that he was going to arrest him because he found a large amount of child pornography on the discs. (*Id.*) In response,

Defendant again acknowledged that the disks and CDs belonged to him when he stated, "I don't know how child porn got on *my disks*." (*Id.* at 66:1-8 (emphasis added)). Defendant, again, contends that he was not informed of his *Miranda* rights before Officer Busic asked him questions about the disks and CDs.

Defendant argues that these statements would have been suppressed at trial had his attorney, Mr. Benge, filed a motion to suppress. Because Mr. Benge failed to do so, Defendant contends that he did not receive the type of assistance guaranteed by the Sixth Amendment. Officer Busic disputes Defendant's version of events. He testified that he did read Defendant his rights in accordance with *Miranda* before questioning Defendant on August 17. (D.E. 75 at 41:7-42:2). Furthermore, Mr. Benge indicated that he did not seek to suppress the statements because Defendant never informed him that his rights had been violated. (D.E. 105-2 ¶ 3).

As an initial matter, the Court finds that any error in failing to move to suppress the incriminating statements did not prejudice Defendant. Certainly Defendant's statements were used at trial to help prove that he owned the discs that contained child pornography. But as the Sixth Circuit noted, the evidence of Defendant's guilt was otherwise "overwhelming." *Blakley*, 239 F. App'x at 233-34. His wife, for example, testified that it was Defendant that had extensive computer knowledge. Janet Hall testified consistently. Likewise, the files that were discovered on the discs tended to show that they belonged to Defendant. For example, a compressed file on one of the discs containing child pornography was protected with the password "DRB"— Defendant's initials. Furthermore, nude and sexually explicit photos of Defendant's wife

and Janet Hall were discovered on the discs.  (D.E. 75 at 68).  Thus, even absent

Defendant's own admissions that the discs belonged to him, there was still overwhelming

evidence from which the jury could, and likely would have found, that Defendant owned

the disks and CDs containing child pornography.

Furthermore, Mr. Benge's failure to move to suppress the statements obtained

from Defendant on September 11 was not the result of ineffective assistance of counsel.

Indeed, based upon Defendant's affidavit, such a motion would have failed.  *See, i.e.*,

*Holmes v. United States*, 281 F. A'ppx 475, 482 (6th Cir. 2008) ("Trial counsel was not

ineffective for failing to file a motion to suppress that would have been meritless.").

According to Defendant, the incriminating statement he made on September 11, 2005,

was made on a porch outside his home.  (D.E. 85-2 at 9-10).  *Before* placing Defendant

under arrest, Officer Busic asked Defendant about the child pornography that he found on

the discs.  (*Id.*)  In response to this question, Defendant acknowledged that the discs

belonged to him.  Only then was Defendant placed under arrest.  (*Id.*)  Based upon these

facts, there had not been a formal arrest at the time Officer Busic asked Defendant about

the disks and CDs, and Defendant points to no other evidence to suggest that he was in

custody, i.e., that there was a "'restraint on [his] freedom of movement' of the degree

associated with a formal arrest."  *Stansbury v. California*, 511 U.S. 318, 322 (1994)

(quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).  Thus, *Miranda* was not

implicated when Defendant made this incriminating statement. *See Beckwith v. United*

*States*, 425 U.S. 341, 346-47 (1976) (incriminating statements made by suspect to

government agents at his home need not be suppressed at trial as the interview was non-

custodial); *see also Kyger v. Carlton*, 146 F.3d 374, 380 (6th Cir. 1998) (*Miranda* not implicated if statements were made in non-custodial setting even if police officers had previously violated *Miranda* during an earlier custodial interrogation). Nor was *Miranda* implicated even if Defendant previously asked to speak with a lawyer when he was arrested on August 17, 2004. *See Kyger v. Carlton*, 146 F.3d 374 (6th Cir. 1998) (holding that the rule that police may not interrogate a suspect after he has requested an attorney "does not . . . apply to suspects who . . . are not in continuous custody.").

Based upon the foregoing, it is unnecessary to determine whether Mr. Benge was ineffective for failing to move to suppress the incriminating statement Defendant made to Officer Busic on August 17. Any failure to move to suppress such evidence was harmless, as the evidence would merely have been cumulative of the other evidence introduced at trial to show that the disks and CDs belonged to Defendant—including the incriminating statement Defendant made on September 11. *See United States v. McNeil*, 106 F. A'ppx 294, 301-302 (6th Cir. 2004) ("Even if [Defendant's] statements were obtained in violation of his *Miranda* rights, . . . their admission at trial was harmless because they were essentially cumulative of statements that he had already made to [the law enforcement officer].").

### ii. *Failing to Move to Suppress Compact Discs (Ground 18)*

Mr. Benge's failure to move to suppress the compact discs containing child pornography that were discovered as a result of the search of the Blakley residence did not constitute ineffective assistance of counsel. It is unclear from Defendant's affidavit and memorandum whether his position is that he expressly declined to consent to the

search of the residence or whether he was simply not present at the time the search was conducted. In either event, his wife, Mary Jackson, did consent to the search. If Defendant was absent when the search was conducted, the search was consistent with the Fourth Amendment. *United States v. Matlock*, 415 U.S. 164 (1974) ("the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared."). Even assuming Defendant was present and expressly declined consent, there would have been no basis for the evidence to be suppressed at trial under longstanding Sixth Circuit precedent applicable at the time of Defendant's trial. *See United States v. Sumlin*, 567 F.2d 684, 688 (6th Cir. 1977) ("We cannot see how the additional fact of [Defendant's] initial refusal to consent in any way lessened the risk assumed that his co-occupant would consent. This additional fact does not increase a reasonable expectation of privacy."). Although *Sumlin* is inconsistent with *Georgia v. Randolph*, 547 U.S. 103 (2006), a subsequent decision of the Supreme Court that is consistent with Defendant's arguments concerning his lack of consent, *Randolph* was not decided until March 22, 2006, almost eight months after Mr. Benge was relieved of his duties in representing Defendant. Certainly Mr. Benge was not ineffective for failing to predict this development in the law. *See Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010) ("'[T]here is no general duty on the part of defense counsel to anticipate changes in the law.'") (quoting *Green v. Johnson*, 116 F.3d 1115, 1125 (5th Cir. 1997)).

### iii.  Search of Defendant's Locked Box (Ground 19-20)

Defendant also contends that his attorney was ineffective for failing to move to suppress evidence that was obtained from his locked box.  According to Defendant, the search was illegal as Officer Busic allegedly directed Ms. Jackson to break open the box so he could obtain access to its contents.  The problem with this argument, assuming these facts are true, is that none of the incriminating discs containing child pornography were obtained from the locked box.  Defendant acknowledged this in his tendered amended memorandum.  (D.E. 96-5 at 17 (stating the search of the locked box "result[ed] in the seizure of items of monetary value and personal items, *none of which served to incriminate the defendant and none of which was used as evidence*.") (emphasis added)).  Because the Court denied his request to file an amended § 2255 memorandum, Defendant asks the Court to ignore this statement made in that document.  However, there is simply no reason for the Court to ignore a statement prepared by Defendant which clearly defeats this aspect of his § 2255 motion.  As none of the evidence taken from the locked box was used as evidence against Defendant, there was simply no prejudice that resulted from this allegedly unlawful search.

### iv.  General Claim of Ineffective Assistance of Counsel

Grounds 12-14 of his claims for ineffective assistance of counsel state that Mr. Benge failed to "present a just defence (sic)," failed to timely "request the state case packet," and failed to "properlly (sic) investagate (sic) after getting the stated case packet."  (D.E. 84 at 12).  These generalized allegations of ineffective assistance of counsel are repeated in his memorandum in support of his § 2255 motion.  (D.E. 85 at 12-

13). However, a "generalized claim of ineffective assistance of counsel, without any particularized acts or omissions, is insufficient for a court to determine ineffective assistance of counsel." *Hurst v. Jabe*, 961 F.2d 1577 (table), 1992 WL 92791, at *2 (6th Cir. 1992).

In Ground 21, Defendant indicates that "the police officer" used notes to refresh his memory at trial, but that Mr. Benge failed to object. However, Defendant does not identify how Mr. Benge's actions or inactions were improper, nor does he identify what the basis for the objection would have been had there been an objection. Furthermore, Defendant fails to identify what "police officer" he is referring to, the portion of "the police officer's" testimony which would have been subject to an objection, or the prejudice that resulted from the failure to object. In short, Defendant has simply failed to carry his burden on either prong of the *Strickland* test.

Similarly, Defendant does not meet his burden under either prong of the *Strickland* test with regard to Ground 22—that Mr. Benge "failed to ask question that would impeach government witness." The only witness's testimony that Defendant mentions in his memorandum is that of his wife. (D.E. 85 at 13). Upon reviewing the transcript of Ms. Jackson's testimony, however, it appears that Mr. Benge did, in fact, undertake efforts to impeach her testimony. (D.E. 75 at 15-27 (cross-examining Ms. Jackson on a letter she wrote to Defendant)). Beyond this general failure-to-cross-examine argument, Defendant does not explain what questions Mr. Benge should have asked, nor does he attempt to show what prejudice he suffered as a result of Mr. Benge failing to ask such questions.

In ground 23 of his motion, Defendant argues that his counsel was ineffective for failing to object to prosecutorial misconduct; that is, he failed to object when the prosecuting attorney allegedly made "hand directions" towards Defendant when Janet Hall was attempting to identify the person she knew as Donald Blakley. However, the record certainly does not reflect any such hand gesture. Furthermore, Mr. Benge states that he does "not recall the prosecutor making any inappropriate hand gestures to elicit Janet Hall's identification of Mr. Blakley . . . ." (D.E. 105-2 ¶ 5). Having failed to cite to any evidence of any such prosecutorial misconduct, Defendant has failed to carry his burden under both prongs of *Strickland*.

In ground 24, Defendant contends that Janet Hall, who appeared at his federal trial as a prosecution witness, was in fact a defense witness in state court. He argues that Mr. Benge should have impeached Ms. Hall on this basis. The fact of the matter, however, is that there is no evidence that Ms. Hall was ever a defense witness in state court,[4] or that she was planning on being a defense witness in state court. The only piece of evidence that Defendant cites is the state court packet attached as an appendix to his § 2255 motion. When reviewing that appendix, however, there is nothing contained in it that shows that Mr. Benge could or should have impeached Ms. Hall during the cross-examination of her testimony during his federal court trial.

In ground 25, Defendant contends that Mr. Benge should have cross-examined various government witnesses on Officer Busic's improper handling of the computer

---

[4]    As there was no trial in state court, there is simply no merit to Defendant's argument that Ms. Hall appeared as a defense witness in the state court prosecution.

seized from the Blakley residence. He contends that Officer Busic, by not awaiting a

forensic analysis of the computer before turning it on to search for elicit photographs,

may have deleted or modified certain files on the computer's hard drive. However, there

was no reason for Mr. Benge to cross-examine the government's witnesses on these

issues because Officer Busic and Detective Frazier informed the jury of this on direct

examination. (*See* D.E. 75 at 39:10-25 (Officer Busic); *id.* at 97:10-100:10 (Detective

Frazier)). It is also clear from Mr. Benge's cross examination of these witnesses that his

examination strategy was not to point out that some files may have been modified on a

hard drive that did not contain any of the child pornography, but rather to show that there

were many computer users that could have downloaded the images and burned them to a

CD. Defendant simply cannot show that this strategy was the result of the ineffective

assistance of counsel.

Lastly, in ground 26, Defendant contends that Mr. Benge was ineffective because

he failed to call Laura Hurst Miracle as a witness. According to Defendant, if Ms.

Miracle was called as a witness, she would have testified that Defendant's wife told Ms.

Miracle that she downloaded the images, with the help of David Blakley, and burned

them to CDs. Defendant claims that his wife scared Ms. Miracle out of testifying at trial.

When a defendant claims that his attorney failed to call a witness at trial, he must "[a]t

the very least, . . . submit sworn affidavits from each of the individuals he has identified

as uncalled witnesses stating whether they were in fact available to appear at trial and

able to give testimony favorable to [the] defense." *Talley v. United States*, No. 1:00-cv-

74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006); *see also United States v.*

*Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("Under whatever framework, however, evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Having failed to present such an affidavit, Defendant cannot assert that his attorney was ineffective for failing to call this putative witness at his trial.

### III. CONCLUSION AND RECOMMENDATION

Having reviewed each of Defendant's 28 grounds for § 2255 relief, the Court concludes that Defendant has failed to make the requisite showing that would entitle him to relief. Therefore, the Court **RECOMMENDS** that Defendant's motion to vacate his conviction and sentence (D.E. 84) be **DENIED**.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 8th day of November, 2010.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge

19